IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| AFI HOLDINGS OF ILLINOIS, INC., d/b/a HAPPY LEAVES, INC., | |
| Plaintiff, | Case No. 16 C 8652 |
| v. | Judge Harry D. Leinenweber |
| NATIONAL BROADCASTING COMPANY, and WATERMAN BROADCASTING, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Defendant Waterman Broadcasting's ("Waterman") Motion to Dismiss the Complaint pursuant to Rule 12(b)(2) [ECF No. 19] is granted. The case against Waterman is dismissed for lack of personal jurisdiction. Plaintiff Happy Leaves ("Happy Leaves") is directed to serve the remaining Defendant, National Broadcasting Company ("NBC"), immediately if it has not done so and if a viable case remains against NBC given the dismissal of Waterman. *See,* FED. R. CIV. P. 4(m).

## I.  BACKGROUND

This case is before the Court on diversity jurisdiction. Happy Leaves, an Illinois company, brings a defamation lawsuit against Waterman Broadcasting, a Florida corporation. ECF

No. 16 (Am. Compl.) ¶¶ 2, 4. (The Court refers to Plaintiff as Happy Leaves, its doing-business-as name, because this is the name Plaintiff uses in its submissions to the Court.) Happy Leaves names NBC, a Delaware corporation headquartered in New York, as a second Defendant in the case, but it is unclear whether Happy Leaves has served NBC in the five months since the suit was instituted. *Id.* ¶ 2. In any event, NBC has not filed an appearance, and this Motion strictly concerns Waterman, not NBC.

Happy Leaves alleges that on July 1, 2016, Waterman aired on its television station a segment about a product called Charlotte's Web. Am. Compl. ¶ 19. Charlotte's Web is a hemp oil extract manufactured by CW Hemp, Inc., a company located in Colorado that is not a party to this lawsuit. *Id.* ¶¶ 7-8. CW Hemp uses Happy Leaves as a distributor for its hemp oil extract. *Id.* ¶ 16. Happy Leaves alleges that before Waterman aired its broadcast, Happy Leaves was the only distributor of Charlotte's Web that sold the product via the website Groupon. *Id.* As it so happens, Groupon is headquartered in Illinois. *Id.*

Waterman's allegedly defamatory news segment called Charlotte's Web "pot" and "medical marijuana." Am. Compl. ¶ 21. It mentioned that the product can be purchased on Groupon, and

"on numerous occasions, the newscast cuts to a screenshot of Groupon's Happy Leaves web page, which shows a picture of Charlotte's Web with text saying, 'Charlotte's Web CBD Oil from Happy Leaves.'" *Id.* ¶¶ 21-22.

The segment was investigated and reported on by a reporter by the name of Graham Hunter ("Hunter"). Before Waterman aired the piece, Hunter had sent an email to Happy Leaves and "reached out" to Groupon. Am. Compl. ¶¶ 25-26. The email to Happy Leaves consisted of two sentences: "What is in your product?" and "How is this legal to dispense in the U.S.?" *Id.* ¶ 27. There is no allegation as to how Hunter "reached out" to Groupon or what he communicated to the company, although the affidavit submitted by Happy Leaves' owner suggests that Waterman contacted Groupon just once. ECF No. 27-1 (Fligg's Decl.) ¶ 4 (attesting that Hunter contacted both Happy Leaves and Groupon on the date of the broadcast).

In his affidavit, Hunter states that he did not connect with anyone at either Happy Leaves or Groupon before the segment aired. ECF No. 19-2 (Hunter's Decl.) ¶¶ 4, 6. He also attests that he did not know that either company is located in Illinois. *Id.* ¶¶ 3, 6. Hunter declares that he "did not rely on Illinois sources," something that Happy Leaves disputes. *Id.* ¶ 5; Fligg's Decl. ¶ 3. Finally, Hunter declares that he did not

"have any reason to believe the impact of the report would be felt in Illinois." Hunter's Decl. ¶ 5. This last statement presumably is because Waterman's broadcast is restricted to the area of Fort Myers/Naples, Florida and 100% of its viewership is in this area. ECF No. 19-2 (Pontius's Decl.) ¶¶ 3, 5. Not surprisingly then, Waterman has no offices or employees in Illinois. *Id.* ¶ 6.

Nonetheless, Waterman has a website, and on this website, it posted the news segment. Happy Leaves alleges that "as a direct result of NBC-2 reporter Graham Hunter 'reaching out' to Groupon about the story in Illinois, Groupon's management and legal department in Chicago saw the segment." Am. Compl. ¶ 30. Groupon thereafter "discontinued all sales of Charlotte's Web on its website" and "Happy Leaves' sales of Charlotte's Web sales were devastated." *Id.* ¶¶ 31, 36. Although Waterman retracted the story from its website just two weeks after the original air date, Happy Leaves claims that harm, calculated to be "in an amount in excess of $1,000,000.00," has been done. *Id.* ¶¶ 35, 42, 49, 57.

Happy Leaves now sues Waterman and NBC in the Northern District of Illinois, alleging violations of Illinois law. NBC is in this lawsuit because Waterman is one of its local affiliates. Waterman, speaking for itself, asks the Court to

dismiss the case against it for lack of personal jurisdiction. The Court grants this request and so does not address the alternative prayer to transfer the case to the Middle District of Florida.

## II.  LEGAL STANDARD

As the Plaintiff, Happy Leaves bears the burden of establishing a *prima facie* case for jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.,* 536 F.3d 757, 760 (7th Cir. 2008). Since Waterman has submitted affidavits in its Rule 12(b)(2) motion to dismiss, Happy Leaves must "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).

The Court considers the pleadings and the parties' affirmative evidence in making its ruling. Where these papers raise a factual dispute, the Court resolves them in Happy Leaves' favor. *Id.* However, it accepts as true "any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Although Waterman urges the Court to disregard any statement not based on an affiant's personal knowledge, the Court finds doing so unnecessary in this case. *See, Contrak,*

*Inc. v. Paramount Enters. Int'l Inc.,* 201 F.Supp.2d 846, 851-52 (N.D. Ill. 2002) ("Several courts have suggested that affidavits submitted in response to a motion to dismiss under Rule 12(b)(2) must be based on personal knowledge or comply with Rule 56(e), . . . but the Seventh Circuit has not addressed this issue."). The disposition of Waterman's Motion does not hinge on whether the Court strikes some of the statements from Happy Leaves' affidavit.

The Court may deny the Motion and exercise personal jurisdiction over Waterman only if an Illinois state court can do so. *Citadel,* 536 F.3d at 760. Under the Illinois long-arm statute, a state court may exercise jurisdiction on any basis allowed by the Illinois and federal constitution. *See,* 735 ILCS 5/2-209(c). The Court proceeds under the federal analysis because the parties have agreed that the requirements of due process under the U.S. Constitution control their case and because "no case has yet emerged where due process was satisfied under the federal constitution but not under the Illinois constitution". *Citadel,* 536 F.3d at 761.

Finally, federal due process requires that, in order to subject a non-resident like Waterman to personal jurisdiction in Illinois, Waterman must "have certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"
*Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945).

### III. ANALYSIS

Before it can engage with the substance of the Motion, the Court must dispose of Happy Leaves' Complaint that Waterman's Motion is too long. Happy Leaves claims that due to the use of "excessive" single spacing and other horrors, Defendant's 15-page brief actually is 17 pages and so does not conform to a local rule. On this ground, Happy Leaves asks the Court to strike the Motion. The Court sees nothing out of the ordinary in the formatting of Waterman's brief and finds no reason to strike any part of it.

In any case, Waterman needed no more than the first ten pages of its brief to argue that the Court does not have personal jurisdiction over it. Happy Leaves disagrees and asserts two independent bases for haling Waterman into court: (1) Waterman is an affiliate of NBC, and (2) Waterman's tort is aimed at Illinois and caused harm to Happy Leaves in that state.

### A. Jurisdiction Based on Affiliation with NBC

Happy Leaves contends that Waterman's Motion to Dismiss should be denied because "general jurisdiction is appropriate against Co-Defendant NBC." ECF No. 27 at 5-6. As a procedural matter, the Court is unprepared to find that it has general

jurisdiction over NBC when NBC has not had an opportunity to be heard on the issue. Waterman is the only Defendant that has filed an appearance in the case, and the Court will decide its Motion strictly on the basis of facts and arguments concerning Waterman.

In addition, Happy Leaves has made no argument as to why the Court has personal jurisdiction over Waterman if, *arguendo,* it has general jurisdiction over NBC. Happy Leaves, in its Complaint, alleges that Waterman is an affiliate of NBC, but beyond this has cited no authority for the proposition that general jurisdiction over one entity gives a court jurisdiction over that entity's affiliates. The argument is therefore waived. *See, United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991); *Cannon v. Burge,* No. 05 C 2192, 2006 U.S. Dist. LEXIS 4040, at *28 n.8, *33, *36, *66, *76-77 (N.D. Ill. Feb. 2, 2006).

### 1. Even if Not Waived, Happy Leaves' Argument Fails as a Matter of Law.

Even if it were not waived, the Court can find no support for Happy Leaves' jurisdiction-by-affiliation argument. Controlling case law has long made clear that in personal jurisdiction inquiries, "[e]ach defendant's contacts with the

forum State must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790 (1984); *Purdue Research,* 338 F.3d at 784; *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 944 (7th Cir. 2000). The Supreme Court reiterated the principle recently, writing that for purposes of establishing jurisdiction over a defendant, courts must focus on the "contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014) (emphasis in original). Here, instead of focusing on Waterman, "the defendant himself," Happy Leaves is attempting to parlay contacts between a third party (NBC) and Illinois into power to hale Waterman into court. But attempts to satisfy jurisdictional demands "by demonstrating contacts between . . . third parties[] and the forum State" violate Due Process and must be rejected. *Id.*

Waterman's affiliation with NBC does not save Happy Leaves' attempt to bootstrap jurisdiction. In *Central States,* the Seventh Circuit examined the issue in the context of a subsidiary-parent relationship and held that, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the

subsidiary." *Central States,* 230 F.3d at 943; *see also, Camasta v. Omaha Steaks Int'l, Inc.,* No. 12-cv-08285, 2013 U.S. Dist. LEXIS 118475, at *4 (N.D. Ill. Aug. 21, 2013) (applying *Central States* to a case where the defendants were not subsidiary-parent but corporate affiliates through a common ownership).

Here, Happy Leaves has made no allegation other than that Waterman is a local affiliate of NBC. It has not alleged that corporate formalities between Waterman and NBC were not observed or that Waterman exercised control over NBC (or vice versa). The Court cannot find that it has jurisdiction over Waterman merely because Waterman is NBC's affiliate.

It is true that Happy Leaves here argues that Illinois has general jurisdiction over NBC whereas the cases cited so far deal with situations where the forum state had specific and not general jurisdiction over a defendant. (This is due to the fact that the case law is much richer in authorities dealing with specific jurisdiction since "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 925 (2011) (quoting Twitchell, *The Myth of General Jurisdiction,* 101 Harv. L. Rev. 610, 628 (1988)) (internal quotation marks omitted)). However, while two types of personal jurisdiction are doctrinally

- 10 -

distinct, *see, e.g., Goodyear,* 564 U.S. at 924 (2011) (discussing the two types of jurisdiction); *Kipp v. SKI Enter. Corp. of Wis.,* 783 F.3d 695, 697-98 (7th Cir. 2015) (same), there is nothing from *Central States* that suggests a different analysis would apply when a forum state has general jurisdiction over a parent or corporate affiliate.

The court in *Central States* based its holding on two rationales. "First," said the court, "where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Central States,* 230 F.3d at 944. Second, "[w]here corporate formalities have been observed, a company's owners reasonably expect that they cannot be held liable for the faults of the company," and this expectation should not be upset. *Id.* Neither of these rationales depends on whether general or specific jurisdiction is at play.

At bottom, *Central States* rests its holding on the "minimum contacts" test set out in the Supreme Court's *International Shoe* opinion. *Id.* at 942-43 (characterizing its holding as "join[ing] other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact"). This test applies to all *in*

*personam* jurisdiction inquiries, regardless of whether they relate to general or specific jurisdiction. *See, e.g., uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010) ("Personal jurisdiction can be either general or specific. . . . In either case, the ultimate constitutional standard is whether the defendant had certain minimum contacts with the forum. . . .") (internal quotation and alteration marks omitted). Thus, by grounding its analysis in the "minimum contacts" framework, *Central States* ensures the relevancy of its holding in both categories of personal jurisdiction. Happy Leaves' argument is irreconcilable with *Central States* and so contrary to law.

### 2. Happy Leaves' Argument Also Must Be Rejected Because of its Unwanted Broader Implications.

It is important to step back and understand the ramifications of what Happy Leaves is trying to do. In pressing this argument, Happy Leaves asks the Court to find that it has jurisdiction over Waterman entirely on the basis of contacts that NBC allegedly has with the forum state. If the Court accepts this argument, then Waterman can be haled into Illinois. But Waterman is not special. All of NBC's affiliates, too, can be dragged to Illinois since jurisdiction depends on NBC, not anything particular to the affiliates. Then, because the

affiliation between Waterman and NBC is largely unspecified, all of NBC's personnel, suppliers, contractors – indeed, any entities with which NBC has a relationship – may be called to Illinois.

Illinois is not special either. The only alleged contacts that NBC has with Illinois are that "NBC maintains permanent offices in Chicago and broadcasts in Chicago twenty-four hours a day, seven days per week, three-hundred-sixty-five days per year." ECF No. 27 at 5; Fligg's Decl. ¶ 6. Having an NBC office and receiving its broadcasts are hardly features unique to Chicago, Illinois. Many states have at least one city big enough such that NBC likely maintains an office and broadcasts in it. Accepting Happy Leaves' argument means that all of NBC's affiliates may be dragged to any of these states.

And NBC is not special. NBC is a large company, but it is far from being unusual for its size. Many other firms have offices in multiple states and maintain some kind of continuous presence akin to 24/7 broadcasts. Under Happy Leaves' theory, all those who associate with these firms can be dragged into court in any state where the firms do business. Such global jurisdiction would eviscerate any link personal jurisdiction has to territorial limits, and without such limits, it is unclear that personal jurisdiction has any meaning left. Should it

succeed here, Happy Leaves may never need to make another personal jurisdiction argument.

For these reasons, the Court rejects Happy Leaves' attempt to craft jurisdiction from NBC to Waterman.

**B.  Jurisdiction Based on Waterman's Own Conduct**

More circumspectly, Happy Leaves argues that the Court has specific jurisdiction due to Waterman's own contacts with Illinois.  The parties agree that, because Happy Leaves' underlying claim against Waterman is defamation, *Calder v. Jones,* controls the analysis in this case.

In *Calder,* an actress residing in California brought a defamation lawsuit against a Florida publication and its reporters for an allegedly defamatory article they wrote and published.  *Calder v. Jones,* 465 U.S. at 784-86.  The Court held that jurisdiction over the defendants in California was proper because "California is the focal point both of the story and of the harm suffered."  *Id.* at 789.  The Seventh Circuit has taken to calling the standard from *Calder* the "express aiming" test because *Calder* "made clear that a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of*

*Hous. Metroplex, P.A.*, 623 F.3d 440, 444 n.1, 445 (7th Cir. 2010).

To show that Waterman's conduct in this case satisfies the "express aiming" test, Happy Leaves relies on the following allegations: (1) Waterman "reached out" to Groupon in Illinois; (2) Waterman used Illinois sources; (3) Waterman's segment was available on its website and viewable in Illinois; and (4) Waterman caused foreseeable harm to Happy Leaves in Illinois. The Court examines each of these contacts to see if, individually or collectively, they allow the Court to exercise jurisdiction over the Defendant.

### 1. Waterman's Contact with Groupon is Too Attenuated to Constitute "Express Aiming" at Illinois.

Happy Leaves' strongest evidence that Waterman targeted Illinois is that Hunter, Waterman's reporter, "reached out to Groupon in Illinois." The Court notes that Groupon being in the same state as Happy Leaves is a fortuitous happenstance. There is no suggestion that Happy Leaves made use of Groupon because of its physical proximity. Groupon serves the nation at large, and Happy Leaves presumably sold hemp oil extract on Groupon to take advantage of its far-flung reach rather than any local character. Put differently, had Groupon been headquartered in, say, California, Happy Leaves likely would have used it still

and Hunter still would have contacted the company, but that contact would not have been "expressly aimed" at the forum state (Illinois).

In any event, neither party says what Hunter communicated to Groupon. Happy Leaves does not allege that Hunter directly defamed it in his communication with Groupon. Rather, it asserts that "Hunter's communication from Florida to Illinois [] caused Groupon to view Waterman's story on Happy Leaves and discontinue sales of Charlotte's web." Fligg's Decl. ¶ 5.

The parties are likewise mum about how Hunter "reached out" to Groupon. Happy Leaves itself suggests that Hunter contacted Groupon just once. Fligg's Decl. ¶ 4. If Hunter's contact with Groupon was like his contact with Happy Leaves, then he may have sent a single email asking two questions, "What is in this product?" and "How is this legal to dispense in the U.S.?". Neither party disputes that Hunter did not actually speak to or receive a real-time reply from anybody at Groupon in his effort to "reach out."

Waterman and Happy Leaves do engage on one point: Hunter's knowledge of Happy Leaves and Groupon's location. Hunter states that he did not know that the companies are located in Illinois. Happy Leaves protests that this denial is "perfunctory." Yet Happy Leaves has presented no evidence from which the Court can

draw an inference that the denial, however perfunctory, is
untruthful. Hunter declares under penalty of perjury that he
had no knowledge of Happy Leaves or Groupon's location. Nothing
about what Happy Leaves alleges that Hunter did – including
investigating Charlotte's Web, emailing Happy Leaves, and
"reaching out" to Groupon – suggests that he likely knew that
Happy Leaves and Groupon are headquartered in Illinois. The
Court does not need a longer than perfunctory "I did not know"
as much as it needs a basis to doubt the veracity of that
statement.

These facts militate against finding that Waterman
"expressly targeted" Illinois. *Tamburo v. Dworkin,* 601 F.3d 693
(7th Cir. 2010), another case dealing with defamation, is
particularly instructive here. The Seventh Circuit in that case
found that one set of defendants specifically directed their
tortious conduct at the forum state but the other did not. *See,*
*Tamburo,* 601 F.3d at 697-98. *Tamburo* thus neatly delineates
where the line may be drawn.

In holding that Illinois may exercise jurisdiction over the
first set of defendants, the Seventh Circuit found the following
facts relevant. One, the defendants wrote messages in which
they supplied "Tamburo's Illinois address" and "urged [the
readers] to contact and harass him." *Tamburo,* 601 F.3d at 706.

Two, a defendant "personally contacted Tamburo by email, accusing him of 'theft' and demanding that he remove the 'stolen' data from The Breeder's Standard." *Id.* Three, the court found that the defendants "engaged in this conduct with the knowledge that Tamburo lived in Illinois and operated his business there; their affidavits do not deny this." *Id.*

In contrast, the court found that Illinois did not have jurisdiction over the remaining defendant. This defendant, DeJong, "allegedly facilitated the posting of some of the individual defendants' tortious messages" by reposting the messages, but "[t]he complaint does not say how many, nor does it describe the content of the messages that were reposted [by DeJong]." *Tamburo,* 601 F.3d at 708. Moreover, "unlike the individual defendants, there are no allegations that DeJong or anyone else associated with [his company] acted with the knowledge that Tamburo operated his business in Illinois or with the specific purpose of inflicting injury there." *Id.*

Between these two sets of facts, there is no doubt that Waterman cleaves more closely to those supporting a finding that it did not target Illinois. Happy Leaves alleges that Hunter "reached out" to Groupon in the state and so, like DeJong, facilitated the spread of the allegedly defamatory broadcast. Yet, like the complaint that failed against DeJong, Happy Leaves

"does not say how many" messages Hunter had with Groupon, "nor does it describe the content of the messages" that Hunter conveyed to Groupon. Moreover, Hunter explicitly denies in his affidavit that he knew that Happy Leaves is located in Illinois, thus differentiating his case from that of the *Tamburo* defendants who could be haled into Illinois. Finally, unlike the tortious messages in *Tamburo,* the broadcast here, far from supplying Happy Leaves' address, references Happy Leaves only to the extent of showing screen captures from its Groupon page.

On these facts, the Court finds that Hunter's "reaching out" to Groupon is insufficient to show that Waterman has purposefully targeted Illinois.

### 2. *Waterman Did Not Use Illinois Sources*

Happy Leaves argues that Waterman targeted Illinois in another way: by using Illinois sources in its news piece. This, argues Happy Leaves, makes Waterman's conduct like that of a defendant in *Calder,* who relied "on phone calls to sources in California for the information contained in the article." *Calder,* 465 U.S. at 785-86.

As evidence that Waterman used Illinois sources, Happy Leaves points to the fact that Waterman's news segment contains "screen captures of [Happy Leaves'] Groupon website." Fligg's Decl. ¶ 3. According to Happy Leaves, the website constitutes

an Illinois source because "[t]he web page is maintained in Illinois and the photographs from the website that are used in the story are copyrighted in Illinois." *Id.* The Court is unpersuaded that a web page can be considered of Illinois origin on the bases asserted.

First, Hunter accessed Groupon's, not Happy Leaves', website. The screen captures Hunter took are of information residing on Groupon's servers. Insofar as this constitutes using a source with a specific location, Hunter used the source drawn from wherever Groupon's servers are located. Happy Leaves does not allege that the servers are in Illinois, much less that Hunter knew that the servers were there and so purposefully targeted the state. *See, NTE LLC v. Kenny Constr. Co.,* No. 14 C 9558, 2015 U.S. Dist. LEXIS 142686, at *9 (N.D. Ill. Oct. 21, 2015) ("Nor does accessing a URL with 'NTE' [the plaintiff's name] in the text establish that Defendant aimed its actions at Illinois. The URL itself does not indicate where NTE is located and, even drawing all reasonable inferences in favor of the Plaintiff, it is not reasonable to expect that anyone who accesses that URL will then research where NTE is located.").

Second, if Hunter did not know that Happy Leaves is located in Illinois, he cannot have known that the people who maintain Groupon's Happy Leaves web page are in Illinois. This is

significant because a defendant's awareness of his contact with a forum state is an important consideration in the analysis of personal jurisdiction.  For instance, in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 480-81 (1985), the Court took into account the fact that the defendant "most certainly knew that he was affiliating himself with an enterprise based primarily in Florida" in ruling that Florida may exercise *in personam* jurisdiction over him.  In *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 757-58 (7th Cir. 2010), the court found "Hemi's argument that it did not purposefully avail itself of doing business in Illinois [to] ring[] particularly hollow" because "Hemi, in fact, knowingly did do business with Illinois residents." Likewise, in *Felland v. Clifton,* 682 F.3d 665, 675 (7th Cir. 2012), the Seventh Circuit reversed a lower court's finding that Wisconsin did not have jurisdiction when the defendant "Clifton and his associates knew from the beginning that the Fellands were Wisconsin residents."  Here, Hunter has sworn that he did not know he was making contact with Illinois, and Happy Leaves has given the Court no basis to doubt that assertion.

Moreover, to assert that a website is an Illinois source because a corporate employee who maintains that website works in Illinois is too far of a stretch.  There may be many people who maintain a website, and the locations from which they do their

work are generally unknown to a visitor to the site.  To premise jurisdiction on such obscured locational details would violate "traditional notions of fair play and substantial justice." *See, World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.").

The state of the copyright of a photograph seen on a website is even further removed from the user's experience. Indeed, given that copyright is a federal scheme and that copyright registration is administered from Washington, D.C., the Court is puzzled as to what Happy Leaves means when it says that "the photographs from the website that are used in the story are copyrighted in Illinois."  *See generally,* 17 U.S.C. §101, *et seq.*

In sum, Happy Leaves has not shown that Waterman purposefully exploited Illinois by using sources drawn from the state.

### 3. Waterman's Website Is Not "Expressly Aimed" at Illinois

Although not explicit in its papers, Happy Leaves also seems to rely on the fact that Waterman's website is accessible

in Illinois.  However, that a website is accessible in a state does not mean that it is "expressly aimed" at that state.

For one, Happy Leaves does not allege that Waterman's website is anything other than uniform nationwide.  Nowhere does Happy suggest that the website experience becomes locally focused or otherwise varies when the person accessing it is from Illinois.  In such circumstances, courts have found that the websites at issue were not targeted at the forum states.  *See, United Airlines, Inc. v. Zaman,* 152 F.Supp.3d 1041, 1054 (N.D. Ill. 2015), (holding that the forum state does not have personal jurisdiction, in part, because "nothing in the record even hints that Skiplagged.com is less accessible or otherwise varies, depending upon from where in the United States (or anywhere else in the world) a user accesses the website"); *Gullen v. Facebook.com, Inc.,* No. 15 C 7681, 2016 U.S. Dist. LEXIS 6958, at *7 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."); *Hemi,* 622 F.3d at 760 ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant

owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"); *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549-50 (7th Cir. 2004) ("The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular.").

In addition, the evidence indicates that Waterman's website, if anything, is aimed away from Illinois. As far as Happy Leaves' allegations go, Waterman had exactly one website visitor from Illinois: Groupon. This is understandable given that Waterman's station "runs predominately local news" and that "100% of Waterman's NBC 2 viewership is in the Ft. Myers/Naples, Florida area." Pontius's Decl. ¶ 3. To the extent that the website hosts the content that was broadcasted, *i.e.,* Florida local news, or caters to those in the Ft. Myers/Naples area, the site is directed towards Ft. Myers/Naples, Florida and away from Illinois. Waterman's website thus favors a finding that Waterman did not aim its conduct at Illinois. *See, Jackson v. Cal. Newspapers P'ship,* 406 F.Supp.2d 893, 898-99 (N.D. Ill. 2005) (granting a motion to dismiss for lack of personal jurisdiction when the defendant's website "is directed at

California residents" and "does not aim its services at [forum-state] Illinois residents").

### 4. Happy Leaves' Injury in Illinois is Insufficient by Itself to Support Jurisdiction in the State

While Happy Leaves may have suffered injury in Illinois, it ignores the fact that such an injury is not sufficient in itself to support jurisdiction. *See, Walden,* 134 S.Ct. at 1125. Happy Leaves seemingly recognizes this principle as it purports to address the issue of how Waterman expressly aimed its tortious action at Illinois. However, Happy Leaves then adopts a reading of the case law that minimizes the importance of the Defendant's conduct. In particular, it cites to *Janmark Inc. v. Reidy,* 132 F.3d 1200 (7th Cir. 1997), for the proposition that when "the injury took place in Illinois, [and] the tort occurred in Illinois," the case is "actionable in Illinois." ECF No. 27 at 8.

The Seventh Circuit has disavowed that such a lesson may be drawn from *Janmark*. In *Tamburo,* 601 F.3d at 705-06, the court clarified that "despite its broad language," *Janmark* must be read to require both "a forum-state injury and 'something more' directed at that state before jurisdiction over a foreign defendant may be considered proper." Happy Leaves attempts to bypass this "something more" by characterizing *Janmark* as

requiring only an "injury in Illinois," or equivalently, a "tort in Illinois."  Although "a tort occurring in Illinois" sounds like it is at least something additional to "an injury in Illinois," *Janmark* reasoned that "[a] wrong does not become a 'tort' until an injury has occurred . . . and the location of the injury therefore is vital to understanding where the tort occurred." *Janmark,* 132 F.3d at 1202.  The "injury" and "tort" thus collapse back into one.

In short, Happy Leaves takes *Janmark* to bless its suit in Illinois because Happy Leaves suffered injury in the state.  But since *Tamburo,* reading *Janmark* to "broadly authoriz[e] personal jurisdiction wherever a tort victim is injured" is no longer permissible.  *Tamburo,* 601 F.3d at 705-06.

The Seventh Circuit recently made known its disapproval of *Janmark* in even more marked terms.  In *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 802 (7th Cir. 2014), the court singled out *Janmark* and stated: "Any decision that implies" that a plaintiff may serve as the only link between the defendant and the forum "can no longer be considered authoritative."  The court's decision was precipitated by *Walden,* in which the Supreme Court explained that, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden,* 134 S.Ct. at

1125.  As "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way," the proper answer as to why this Court has jurisdiction over Waterman cannot be that Happy Leaves experienced injury in Illinois. *Id.*

Ultimately, Happy Leaves has not established the kind of contacts that constitute the indispensable "something more." The Court earlier rejected that Waterman's "reaching out" to Groupon, its use of screen shots, or its website shows "minimum contacts" with the forum state.  The Court now finds that the combination of these activities does not clear the bar either.

At bottom, the only contacts that Waterman made with Illinois were to view some web pages, send Happy Leaves a two-sentence email, and attempt an unspecified form of communication with Groupon from which it got no real-time response.  These contacts resulted in a broadcast that mentioned Happy Leaves only insofar as to show screen caps of its Groupon page and that garnered no viewer in Illinois other than Groupon.  On these facts, the Court concludes that Waterman's contacts with Illinois are too attenuated for the exercise of power to hale it into court.  *See, Burger King,* 471 U.S. at 475, ("This 'purposeful availment' requirement ensures that a defendant will

not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.").

**IV.  <u>CONCLUSION</u>**

For the reasons stated herein, Defendant Waterman's Motion to Dismiss [CF No. 19] is granted.

**IT IS SO ORDERED.**

_____
                                Harry D. Leinenweber, Judge
                                United States District Court

Dated: March 9, 2017